UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VICTOR McKEEVER,

                      Plaintiff,

    -against-

MADELINE SINGAS, BRITTANY R. GURRIER,
LAUREN KALAYDIJAN, MARY MURACK,
DOROTHY J. MARTIN, KRISTIN C. ROSS,
STEVEN STADTMILLER, PATRICK DELANEY,
PATRICK CARROLL, COUNTY OF NASSAU,
INCORPORATED VILLAGE OF MINEOLA, NEW
YORK, COUNTY OF ALLEGHENY,
PENNSYLVANIA, and CITY OF PITTSBURGH,
PENNSYLVANIA,

                      Defendants.
------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
17-cv-4996 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this civil rights action, on referral from the Honorable Joanna Seybert for Report and Recommendation, are Defendants' Dorothy Martin ("Martin"), County of Nassau ("Nassau County"), Madeline Singas ("Singas"), Brittany Gurrier ("Gurrier"), Lauren Kalaydijan ("Kalaydijan"), Mary Murack ("Murack"), Patrick Carroll ("Carroll" and collectively with Nassau County, Singas, Gurrier, Kalaydijan, and Murack, the "County Defendants")[1], Steven Stadtmiller ("Stadtmiller"), Patrick Delaney ("Delaney" and together with Stadtmiller, the "PA/DA Defendants"), and County of Allegheny ("Allegheny County") motions to

---

[1] According to the County Defendants, Gurrier's and Murack's proper names are Gurrieri and Purack, respectively. *See* Memorandum of Law in Support of County Defendants' Motion to Dismiss ("County Def. Mem."), DE [74], at 1.

dismiss Plaintiff *pro se* Victor McKeever's ("Plaintiff" or "McKeever") Second Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), insufficient service of process pursuant to Rule 12(b)(5) and failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Defendant Martin's Motion to Dismiss Plaintiff's Second Amended Complaint ("Martin Motion"), Docket Entry ("DE") [61]; County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, DE [66]; PA/DA Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, DE [77]; Defendant Allegheny County's Motion to Dismiss Plaintiff's Second Complaint, DE [83] (collectively, "Defendants' Motions").[2]

By way of Complaint dated August 23, 2017, amended on July 30, 2020, and again on September 21, 2020, Plaintiff commenced this action against Martin, the County Defendants, the PA/DA Defendants, Allegheny County, Kristin Ross ("Ross"), the Village of Mineola ("Mineola"), and the City of Pittsburgh ("Pittsburgh" and together with Martin, the County Defendants, the PA/DA Defendants, Allegheny County, Ross, and Mineola, "Defendants"), in their individual and professional capacities, for:  (1) violation of his constitutional and statutory extradition rights, pursuant to 42 U.S.C. § 1983, against all Defendants; (2) conspiracy to violate McKeever's extradition rights, pursuant to 42 U.S.C. § 1985, against all Defendants; (3) malicious abuse of process, pursuant to 42 U.S.C. § 1983, against all Defendants;

---

[2] Allegheny County only bases its motion to dismiss on Rule 12(b)(2) for lack of personal jurisdiction and does not explicitly seek to dismiss the Second Amended Complaint pursuant to Rule 12(b)(5). Necessarily underpinning this argument, however, is Plaintiff's failure to properly serve the summons and Complaint on – thus failing to establish personal jurisdiction over – Allegheny County.

(4) conspiracy to maliciously abuse process, pursuant to 42 U.S.C. § 1985, against all Defendants; (5) discrimination on the basis of race and color in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*, against all Defendants; (6) failure to intervene, pursuant to 42 U.S.C. § 1983, against Carroll only; (7) various constitutional violations against Nassau County, Allegheny County, Mineola, and Pittsburgh pursuant to *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 658-59, 98 S. Ct. 2018, 2019-20 (1978), and:  (8) a state law cause of action for defamation, against Singas in her individual capacity.  *See* Complaint ("Compl."), DE [1]; First Amended Complaint ("FAC"), DE [17]; Second Amended Complaint ("SAC"), DE [19].  For the reasons set forth herein, the Court respectfully recommends that Defendants' Motions be granted in their entirety, and that the Second Amended Complaint be dismissed with prejudice as to Martin, the PA/DA Defendants, the County Defendants, and Allegheny County, without leave to replead. Plaintiff's claims against Mineola and Ross – who have not moved to dismiss the Second Amended Complaint – would remain.

## I.    BACKGROUND

### A. <u>Materials Considered by the Court</u>

In light of the liberal pleading standard applicable to *pro se* civil rights complaints in this Circuit, *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002), the Court draws the following facts from Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Plaintiff' Opposition" or Pl. Opp.") DE [75], in addition to the Complaint, First Amended Complaint, and Second Amended Complaint.  *See Washington v. Westchester Cnty. Dep't of Correction*, No. 13-cv-5322,

2015 WL 408941, at *1, n. 1 (S.D.N.Y. Jan. 30, 2015) ("While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, given Plaintiff's *pro se* status, the Court will consider new factual allegations contained in Plaintiff's opposition.").

Moreover, the Court considers the factual allegations set forth in the original Complaint and its attachments, to the extent such allegations are not repeated in the First Amended Complaint, Second Amended Complaint, or Plaintiff's Opposition. *See id.* ("[G]iven Plaintiff's *pro se* status,…the Court will consider facts from the Plaintiff's Complaint…that have not been repeated in the Amended Complaint." (citations omitted)); *see also Fleming v. City of New York*, No. 10-cv-3345, 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Since *pro se* civil rights complaints should be read with…generosity, [Plaintiff's original] complaint must be given the benefit of incorporation." (alterations in original) (quoting *Camarano v. City of New York*, 624 F. Supp. 1144, 1147-48 (S.D.N.Y. 1986))).

The Court also considers all exhibits attached to Defendants' Motions, to the extent relied upon or referenced in the Complaint, First Amended Complaint, Second Amended Complaint or Plaintiff's Opposition.  Although Defendants, and not Plaintiff, filed these documents with the Court, Plaintiff's Opposition repeatedly references portions of documents attached to Defendants' Motions as exhibits. Because the Court is construing Plaintiff's Opposition as an extension of the Amended Complaint, materials referenced therein are properly considered at this juncture.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that, for

4

purposes of Fed. R. Civ. P. 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)).

### B. **The Parties**

McKeever is a Pennsylvania resident. *See* FAC at 2. Mineola is a village located within Nassau County, a county located on Long Island, New York. *Id.* at 3(b). Pittsburgh is a city located within Allegheny County, a county located in southwestern Pennsylvania. *Id.* At all relevant times, Singas served as Nassau County's District Attorney, while Gurrier, Kalaydijan and Murack were employed by the Mineola-based Nassau County District Attorney's Office ("NCDA") as Assistant District Attorneys ("ADA"). *Id.* According to McKeever, Carroll served as a Detective with the Nassau County Police Department ("NCPD"), while Ross was employed by New York State as an "Extradition Specialist." *Id.* at 3(a). Similarly, Stadtmiller was employed by the Allegheny County District Attorney's Office ("ACDA") as an ADA, Delaney worked for the ACDA as an "Extradition Paralegal," and Martin served as Pennsylvania's "Director of Extradition." *Id.*

### C. **The Indictment and the Warrant**

On or about December 30, 2015, Singas and Murack obtained a fugitive indictment (the "Indictment") against Plaintiff for conspiracy to commit certain drug crimes in Nassau County, from a Nassau County grand jury, and subsequently filed the Indictment with the New York Department of State. *Id.* at ¶¶ 1, 41. That same day, Singas submitted the Indictment to Nassau County Supreme Court Justice Alan Honorof, who issued a fugitive warrant for McKeever's arrest (the "Warrant"). *Id.* at

¶ 2.  On or about January 7, 2016, Plaintiff was arrested in Pittsburgh, Pennsylvania, on an Allegheny Sherriff's Department Fugitive Complaint, which was based on the Warrant issued by Justice Honorof.  *Id.* at ¶ 3.  Plaintiff was subsequently held in the Allegheny County jail.  *Id.* at ¶ 5.

On or about January 24, 2016, McKeever challenged the Warrant on the basis that he "was [n]ever physically present in the state of New York," as set forth in the Indictment.  *Id.* at ¶ 4.  On or about February 1, 2016, at the apparent request of unidentified New York and Pennsylvania officials, Stadtmiller sent Plaintiff's Allegheny County jail intake photo to Carroll, who included the photo in his signed and notarized February 11, 2016 affidavit stating that McKeever was a "fugitive of the state of New York."  *Id.* at ¶¶ 5-7.  On or about March 7, 2016, Singas signed a notarized "requisition/fugitive extradition application," swearing under oath that Plaintiff "was physical[ly] present in the State of New York during the commission of [the] crimes alleged in [the Indictment], and fled the New York jurisdiction."  *Id.* at ¶ 8.  This extradition application was sent to the ACDA on April 6, 2016.  *Id.* at ¶ 9.

## D. **Plaintiff's Pennsylvania *Habeas Corpus* Proceeding**

On May 12, 2016, while still incarcerated at the Allegheny County jail, Plaintiff filed a writ of *habeas corpus* – including an "Allegheny County Police officer [ iron clad ] Alibi" and flight records allegedly proving that McKeever "could not have been in the State of New York" on the date and time alleged in the Indictment – with the local Allegheny County criminal court.  *Id.* at ¶ 10.  On May 16, 2016, Ross, Martin, and the PA/DA Defendants allegedly discussed, via email, whether the Indictment

mistakenly contained language regarding Plaintiff's location at the time of his alleged crimes. *Id.* at ¶ 12. On May 20, 2016, at Singas's direction, Carroll filed an amended Nassau County non-fugitive arrest warrant, stating that Plaintiff had not been in New York during the commission of the alleged drug crimes. *Id.* at ¶ 13. On May 23, 2016, the Allegheny County Court judge to whom McKeever submitted his application for a writ of *habeas corpus* denied the application, and stated that:

> I don't doubt for a moment, and I don't know that it could be disputed for this record, factually, that [Plaintiff] wasn't in the state of New York on November 22, 2015, and all parties stipulated that the plaintiff could prove that on November 22, 2015.

*Id.* at ¶ 14. Nevertheless, on May 23, 2016, that judge ordered that Plaintiff be extradited. *Id.* at ¶ 16. McKeever was extradited from Pennsylvania to New York on June 8, 2016. *Id.* at ¶ 17.

On June 9, 2016, Plaintiff was arraigned in New York on the original Warrant, not the amended non-fugitive warrant. *Id.* at ¶ 18. During this arraignment, Kalaydijan stated – incorrectly, according to Plaintiff – that, "[t]here [are] no allegations that [McKeever] was ever in New York[…] in fact a non-fugitive warrant was issued for his [e]xtradition." *Id.* at ¶ 19. In response, Plaintiff's criminal defense counsel informed the arraigning court that both the NCDA and ACDA had previously argued that McKeever was physically present in New York on November 22, 2015, the date stated in the Warrant. *Id.*

On July 15, 2016, Singas allegedly informed unidentified media outlets that Plaintiff had been "physically present in New York during the commission of a crime in Queens County" on November 22, 2015, and that he had been "supplying large

amounts of drugs to the State of New York from Pittsburgh, PA." *Id.* at ¶ 21. Kalaydijan included this same allegation in her opposition to Plaintiff's motion to dismiss his criminal complaint. *Id.* On October 20, 2016, McKeever's criminal defense counsel attempted to use Singas's and Kalaydijan's statements to persuade an Allegheny County Court judge to rescind Plaintiff's extradition. *Id.* at ¶ 21. This renewed application was subsequently denied on or about July 17, 2017, because Plaintiff was no longer within that court's jurisdiction. *Id.* at ¶ 22.

E. **Plaintiff's New York *Habeas Corpus* and Article 78 Proceedings**

At the beginning of July 2017, McKeever filed another writ of *habeas corpus* in the New York Supreme Court, Appellate Division's Second Department, which again challenged the Indictment and the Warrant. *Id.* at ¶ 23. On or about July 28, 2017, Gurrier opposed McKeever's new motion on behalf of the NCDA. *Id.* at ¶ 24. In her opposition, Gurrier allegedly acknowledged that the Warrant incorrectly classified Plaintiff as a fugitive from New York and asserted that a non-fugitive warrant had been issued prior to McKeever's extradition to from Pennsylvania to New York. *Id.* On December 1, 2017, the Second Department denied Plaintiff's second motion for a writ of *habeas corpus*. *Id.* at ¶ 27.

On or about April 10, 2018, McKeever filed a petition, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") in the Appellate Division's Second Department, alleging that the trial level-criminal court lacked jurisdiction over him because of the Warrant's fugitive/non-fugitive discrepancy. *Id. at* ¶ 28. Five days later, on April 15, 2018, pursuant to a question from McKeever, Gurrier stated

that Plaintiff had been arrested pursuant to the amended non-fugitive warrant, not the original Warrant. *Id.* at ¶ 29.  On June 12, 2018, Ross sent an affidavit stating that she "never completed any amended non-fugitive Governor's warrant request for [McKeever]." *Id.* at ¶ 31.

Plaintiff subsequently filed for leave to appeal the Second Department's decision to the New York Court of Appeals, which Gurrier opposed on behalf of the NCDA, on August 12, 2018, and the New York Court of Appeals denied on September 20, 2018. *Id.* at ¶¶ 32-33.  On October 5, 2018, Plaintiff filed a motion to renew his Article 78 motion, which the Second Department denied on December 10, 2018. *Id.* at ¶ 34.  On January 9, 2019, McKeever filed a motion to dismiss the criminal complaint against him, alleging that his extradition was illegal. *Id.* at ¶ 35.  The Nassau County criminal court declined to hear the motion. *Id.*  Plaintiff was released[3] on bail on January 20, 2019. *Id.* at ¶ 36.  On or about February 24, 2020, McKeever pled guilty in Nassau County Criminal Court to one count of felony criminal conspiracy under New York Penal Law § 105.10 and was sentenced to a term of imprisonment of 18 months to three years. *See* DE [63-2] (Plaintiff's Disposition of Indictment).

### F.  <u>Procedural History</u>

McKeever commenced this action against Nassau County and Singas, in her individual and professional capacities, by way of Complaint dated August 23, 2017, asserting claims for: "(a) malicious abuse of process; (b) false/illegal arrest/seizure; (c)

---

[3] McKeever does not provide the Court with the name of the facility where he was apparently incarcerated.

kidnapping under color of law; (d) civil and constitutional tort, *prima facie* tort; (e) personal tort/slander-libel; [and] (f) violation of constitutional and civil rights." Compl. at 6.  On December 21, 2017, Judge Seybert stayed the matter pending the conclusion of McKeever's New York state criminal proceedings.  *See* DE [9].  That stay was lifted on March 16, 2020.  *See* March 16, 2020 Electronic Order.  With the Court's permission, *see* May 1, 2020 Electronic Order, Plaintiff filed his First Amended Complaint and Second Amended Complaint on July 30 and September 21, 2020, respectively.  *See* Compl.; FAC; SAC.  Plaintiff's amended pleadings added Martin, Ross, Mineola, Pittsburgh, Allegheny County, the PA/DA Defendants, and the remaining County Defendants as Defendants in this lawsuit and asserted claims for:  (1) violation of his constitutional and statutory extradition rights under § 1983 and conspiracy to violate those rights pursuant to § 1985, against all Defendants; (2) malicious abuse of process under § 1983 and conspiracy to abuse process under § 1985, against all Defendants; (3) race discrimination in violation of Title VI, against all Defendants; (4) failure to intervene, pursuant to § 1983, against Carroll only; (5) various constitutional violations against Nassau County, Allegheny County, Mineola, and Pittsburgh pursuant to *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 658-59, 98 S. Ct. 2018, 2019-20 (1978), and:  (6) a state law defamation claim, against Singas individually.  *See generally* FAC; SAC.

After an April 19, 2021 conference, this Court set briefing schedules for Defendants' Motions.  *See* DE [45].  Defendants filed their motions to dismiss between September 2-5, 2021, all of which Plaintiff has opposed.  *See generally* Defendants'

Motions.  Judge Seybert referred Defendants' Motions to this Court for report and recommendation on September 13, 2021.[4]  *See* September 13, 2021 Referral Order. That same day, Plaintiff withdrew all of his claims against Pittsburgh.  *See* DE [89]. Ross filed her Answer to McKeever's Second Amended Complaint on March 29, 2022. *See* DE [97].  Plaintiff moved for a default judgment against Mineola on April 4, 2022. *See* DE [98].  For the reasons set forth below, the Court respectfully recommends that Defendants' Motions be granted in their entirety, that the Second Amended Complaint be dismissed with prejudice as to Martin, the PA/DA Defendants, the County Defendants, and Allegheny County, and that McKeever not be granted leave to replead.  Plaintiff's claims against Mineola and Ross, who did not move, remain.

## II.   LEGAL STANDARDS

### A.  <u>Fed. R. Civ. P. 12(b)(2)</u>

Federal Rule of Civil Procedure 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery."  *A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011).  In considering a motion to dismiss for lack of personal jurisdiction, a court may rely on materials beyond the pleadings.  *Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013) (when considering a 12(b)(2) motion, "the Court may also rely on submitted affidavits and other supporting materials submitted in relation to the motion").  "When responding to a

---

[4] Judge Seybert also referred Plaintiff's premature motion to strike the Martin Motion, DE [55], to this Court. *See* September 13, 2021 Referral Order. For the reasons set forth below, the Court respectfully recommends that McKeever's motion to strike be denied with prejudice.

Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999); *see also T.A. v. Leff*, No. 17-cv-4291, 2018 WL 5077163, at *4 (E.D.N.Y. Jul. 19, 2018), *report and recommendation adopted sub nom. Lally v. Leff*, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

### B. <u>Fed. R. Civ. P. 12(b)(5)</u>

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010) (summary order); *see also Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016); *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "Because a Rule 12(b)(5) motion implicates 'whether [the court] has jurisdiction,' the court 'looks to matters outside the complaint.'" *Hines v. Roc-A-Fella Records, LLC*, No. 10-cv-4587, 2020 WL 1888832, at *1-2 (S.D.N.Y. Apr. 16, 2020) (quoting *Cassano*, 186 F. Supp. 3d at 320).

### C. <u>Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955,

1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*,

854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### D. *Pro Se* **Pleadings**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).  The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances" so that *pro se* plaintiffs do not "forfeit their rights by virtue of their lack of legal training"). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

### III.   DISCUSSION

The Complaint, FAC, and SAC allege causes of action under:  (1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1985; (3) Title VI; (4) *Monell v. Dept. of Soc. Serv. of City of New*

*York*, 436 U.S. 658, 658-59, 98 S. Ct. 2018, 2019-20 (1978); and (5) a state law cause of action for defamation.  Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Defendants' Motions be granted and that the Second Amended Complaint be dismissed with prejudice against Martin, the PA/DA Defendants, and Allegheny County on collateral estoppel grounds, which were raised by those Defendants only, and that Plaintiff's claims against the County Defendants be dismissed with prejudice under prosecutorial and sovereign immunity.  McKeever's claims against Ross and Mineola should remain intact as those Defendants have not filed motions to dismiss.  Nevertheless, and for the sake of a more complete record, the Court addresses Defendants' other arguments as well.

A. **Defendants' Fed. R. Civ. P. 12(b)(2) and 12(b)(5) Motions to Dismiss**

Initially, Martin and the PA/DA Defendants contend that Plaintiff's claims against them must be dismissed with prejudice for lack of personal jurisdiction, *see* Memorandum of Law of Dorothy Martin in Support of her Motion to Dismiss ("Martin Mem."), DE [62], at 10-11; Memorandum of Law in Support of Defendants Steven Stadtmiller and Patrick Delaney's Motion to Dismiss the Amended Complaint ("PA/DA Mem."), DE [78], at 22-23, while Allegheny County argues that McKeever's Second Amended Complaint must be dismissed as to it with prejudice for failure to serve the original summons and Complaint, pursuant to Fed. R. Civ. P. 12(b)(2).  *See* Allegheny County's Brief in Support of its Motion to Dismiss the Complaint ("AC Mem."), DE [84], at 7-9.  McKeever generally opposes these arguments.  *See* Pl. Opp. at 8-10.

15

### 1.  Martin's and the PA/DA Defendants' Rule 12(b)(2) Arguments

At the outset, Martin and the PA/DA Defendants assert that this Court lacks personal jurisdiction over them, and that, as a result, the Second Amended Complaint must be dismissed against them with prejudice.  *See* Martin Mem. at 10-11; PA/DA Mem. at 22-23.  To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff "must make a *prima facie* showing that jurisdiction exists." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81-82 (2d Cir. 2018).  Such a showing entails making "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Id.* (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010)) (internal quotation marks and citation omitted; alteration in original).  Personal jurisdiction may be either specific or general, and "[t]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Chinese Americans Civ. Rights Coalition, Inc. v. Trump*, No. 21-cv-4548, 2022 WL 1443387, at *4 (S.D.N.Y. May 6, 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) (*per curiam*)).  Specific jurisdiction "is available when the cause of action sued upon arises out of the defendant's activities in a state," while general jurisdiction, on the other hand, "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Austin Envtl. Corp. v. Margarita Express, LLC*, No. 21-cv-4385, 2022 WL 1443356, at *7 (S.D.N.Y. May 6, 2022) (internal citations omitted).  "To make out a prima facie case of personal jurisdiction, whether based on general or specific personal

jurisdiction, [the party asserting personal jurisdiction] must establish both 'a statutory basis' for jurisdiction and that exercise of such jurisdiction accords 'with constitutional due process principles.'" *Id.* (quoting *Hiscox Ins. Co., Inc. v. Bordenave*, No. 18-cv-10222, 2019 WL 2616338, at *4 (S.D.N.Y. June 26, 2019)).

Although presently inapplicable, New York exercises general personal jurisdiction pursuant to N.Y. CPLR § 301, which provides that New York has general jurisdiction over an entity that "has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotation marks omitted).

Where a plaintiff seeks to invoke New York's specific personal jurisdiction over a non-domiciliary through its long-arm statute – N.Y. CPLR § 302 – courts undertake a two-step "due process" analysis to determine whether specific personal jurisdiction can be exercised over the particular defendant.  First, courts "evaluate the quality and nature of the defendant's contacts with the forum state under the totality of the circumstances. Where the claim arises out of, or relates to, the defendant's contacts with the forum – *i.e.*, specific jurisdiction is asserted – minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Id.* (citing *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013)) (internal quotations marks, citation, and brackets omitted).  Second, once minimum contacts are established, a court considers those contacts "in light of

17

other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* (internal quotation marks omitted). N.Y. CPLR § 302(a) provides for jurisdiction over a non-domiciliary who:

> (1) Transacts any business within the state or contracts anywhere to supply goods or services in the state;

> (2) Commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;

> (3) Commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

> (4) Owns, uses, or possesses any real property situated within the state.

N.Y.C.P.L.R. § 302(a).

Applying these standards, the Court concludes that McKeever has failed to establish the Court's personal jurisdiction over Martin or the PA/DA Defendants. Initially, Plaintiff has not alleged that Martin attempted to transact business within New York as set forth in § 301, nor can this Court envision any way in which this section would apply to the present circumstances. McKeever has also failed to allege that Martin had any meaningful contacts with New York or acted in a way so as to bring her within the ambit of § 302(a). Here, McKeever only alleges that Martin sent emails while she was present in Pennsylvania to certain extradition officials who were present in New York. *See* FAC ¶ 13. This allegation, by itself, is insufficient to

18

establish personal jurisdiction as to Martin. *See Century Sports, Inc. v. Ross Bicycles, LLC*, No. 19-cv-4842, 2021 WL 1108639, at *3 (E.D.N.Y. Mar. 23, 2021).

McKeever has similarly failed to establish that the PA/DA Defendants are subject to the Court's jurisdiction. Indeed, Plaintiff neither disputes that the PA/DA Defendants reside in Pennsylvania, nor alleges that either Defendant was physically present in New York. *See generally* SAC. Moreover, outside of Stadtmiller's sending of McKeever's picture to Carroll, all of Plaintiff's interactions with the PA/DA Defendants took place in Pennsylvania. *Id.* These interactions are similarly insufficient to subject the PA/DA Defendants to the Court's personal jurisdiction. *See Century Sports*, 2021 WL 1108639, at *3. For this reason, the Court respectfully recommends that the Second Amended Complaint be dismissed as to Martin and the PA/DA Defendants with prejudice, and without leave to replead.

### 2.  Allegheny County's Rule 12(b)(2) and 12(b)(5) Arguments

Allegheny County next asserts that the Second Amended Complaint must be dismissed against it with prejudice pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) for failure to serve the original summons and Complaint. *See* AC Mem. at 7-9. Rule 4 governs the content, issuance, and service of a summons. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Technical errors in a summons generally do not render service invalid," but "where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *Id.* at 65.

Rule(4)(j) governs service of a foreign, state, or local government entity.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016).  Under Rule 4(j), a plaintiff who asserts a claim against a municipality must serve the summons and complaint either:  (i) upon the municipality's "chief executive officer"; or (ii) in a manner "prescribed by that [applicable] state's law."  *See* Fed. R. Civ. P. 4(j)(2)(A)-(B).

These methods of service are generally limited, however, to:  (i) parties who are "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"; (ii) a party joined under Fed. R. Civ. P. 14 or 19 and "served within a judicial district of the United States and not more than 100 miles from where the summons was issued"; or (iii) when authorized by a federal statute.  *See* Fed. R. Civ. P. 4(k)(1).  Similarly, for claims arising under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

If a defendant is not properly served "within 90 days after the complaint is filed," the Court "must" dismiss the action without prejudice against the unserved defendant(s), "or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *See id*.  That being said,

a court also "h[as] the discretion to grant an extension of time to serve the defendant" if it so desires. *Di Pompo v. Mendelson*, No. 21-cv-1340, 2022 WL 1093500, at *4 (S.D.N.Y. Apr. 7, 2022) (quoting *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)). To obtain a discretionary extension absent a showing of good cause, the plaintiff "must ordinarily advance some colorable excuse for neglect." *Deptula v. Rosen*, 558 F. Supp. 3d 73, 85 (S.D.N.Y. 2021) (internal quotation marks and citations omitted). Courts then "balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party." *Spinale v. U.S.*, No. 03-cv-1704, 2005 WL 659150, at *4 (S.D.N.Y. Mar. 16, 2005).

As a threshold issue, the parties do not dispute that, although Allegheny County was provided by the United States Marshal's Office with a copy of the Complaint and a request for a waiver of service of process on or about March 17, 2021, Allegheny County did not waive service, and Plaintiff never served Allegheny County with the Complaint. *See* DE [84-1]. McKeever therefore failed to timely serve Allegheny County with the Complaint under Rule 4. Moreover, this approximately 9-month gap between the lifting of the stay in the matter and attempted service not only significantly exceeds the applicable 90-day statute of limitations for service, *see* Fed. R. Civ. P. 4(m), but renders the suit time-barred as to Allegheny County because the three-year statute of limitations applicable to federal civil rights claims has run. *See Hernandez v. City of New York*, No. 21-cv-2397, 2022 WL 2047577, at *2 (S.D.N.Y. Jun. 7, 2022) (citing *DeSuze v. Ammon*, 990 F.3d 264, 271 (2d Cir. 2021); *Milan v. Werthweimer*, 808 F.3d 961, 963 (2d Cir. 2015)) ("Section 1983 claims brought in New

York are subject to a three-year statute of limitations" which "begins to run as soon as Plaintiff "knows or has reason to know of the injury giving rise to the claim."); *Bey v. Nassau County Dist. Attorney's Off.*, No. 21-cv-5714, 2022 WL 1469401, at *3 (E.D.N.Y. May 10, 2022) (quoting *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013)) (finding that a plaintiff's *pro se* status "is no excuse for failure to serve the defendant properly and does not automatically amount to good cause."); *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them."). Based on these standards and the below reasoning, the Court recommends that the Second Amended Complaint be dismissed as to Allegheny County with prejudice and without leave to replead.

Moreover, McKeever has failed to establish that this Court has personal jurisdiction over Allegheny County. Specifically, Plaintiff's Second Amended Complaint contains no allegations that Allegheny County had any contacts that were "so continuous and systematic" that Allegheny County could fairly be described as "essentially at home" in New York, or that the long-arm statute somehow applies. *Brown*, 814 F.3d at 625 (internal quotation marks omitted); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). For this alternative reason, the Court recommends that the Second Amended Complaint be dismissed as to Allegheny County with prejudice and without leave to replead.

## B. **Defendants' Fed. R. Civ. P. 12(b)(6) Motions to Dismiss**

### 1. **Collateral Estoppel**

Martin, the PA/DA Defendants, and the County Defendants next move to dismiss all or part of Plaintiff's Second Amended Complaint pursuant to the doctrine of collateral estoppel, which is properly reviewed under Rule 12(b)(6).  *See* Martin Mem. at 7-8 (seeking dismissal of McKeever's 42 U.S.C. § 1983 claim); PA/DA Mem. at 19-21 (seeking dismissal of all claims against them); County Def. Mem. at 9-10 (same); *see also Bd. of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*, 652 F. Supp 2d. 463, 470 (S.D.N.Y. 2009) (citing *Sassower v. Abrams*, 833 F. Supp. 253, 264, n. 18 (S.D.N.Y. 1993) (finding it "well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion.").  Collateral estoppel bars re-litigation of an issue when (1) "the identical issue necessarily was decided in the prior action and is decisive of the present action"; and (2) "the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt*, 701 F. Supp. 2d 340, 349-50 (E.D.N.Y. 2010); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (Finding that "the doctrine of collateral estoppel precludes a party from litigating in a subsequent action or proceeding on an issue clearly raised in a prior action or proceeding and decided against that party…whether or not the tribunals or causes of action are the same.") (internal quotations and citations omitted).

Applying these standards, the Court concludes that Martin, the PA/DA Defendants, and the County Defendants have established that Plaintiff is collaterally

estopped from prosecuting his Second Amended Complaint as to them.  Here, as noted above, McKeever has previously litigated the same issue presented in this case in his Pennsylvania state court extradition proceeding.  *See* FAC ¶¶ 10-22.  There, Plaintiff asserted that his extradition from Pennsylvania to New York was unlawful because he was not present in New York during the commission of the alleged drug transaction, and that he was not a fugitive because he never fled from New York to Pennsylvania.  *See* DE [19-2] at 33-40, 67-69.  The Pennsylvania court rejected those arguments.  *See* FAC ¶¶ 14-16.  McKeever's current claims were "necessarily decided" by the Pennsylvania state court judge presiding over his extradition proceedings, and Plaintiff "had a full and fair opportunity to litigate [this] issue in the prior action." *Caldwell*, 701 F. Supp. 2d at 349-50.  Accordingly, the Court respectfully recommends that Martin's, the PA/DA Defendants', and the County Defendants' motions to dismiss the Second Amended Complaint on this basis be granted with prejudice. Notwithstanding this recommendation, the Court still evaluates whether McKeever's individual causes of action should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## 2. Extradition Clause

McKeever brings two interrelated causes of action pursuant to 42 U.S.C. §§ 1983 and 1985, through which he contends that all Defendants conspired to, and actually did deprive him of his substantive rights under the Constitution's Extradition Clause.  *See* SAC at 11-17.  Under Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any

> citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law….

42 U.S.C. § 1983.

"To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was 'committed by a person acting under color of state law'; and (2) that such conduct 'deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Ramon v. Corp. City of New York*, No. 17-cv-2307, 2019 WL 2271896, at *3 (E.D.N.Y. Jan. 2, 2019), *report and recommendation adopted*, 2019 WL 1306061 (E.D.N.Y. Mar. 21, 2019) (citing *Laface v. E. Suffolk Boces*, 2018 WL 6002395, at *12 (E.D.N.Y. Nov. 15, 2018); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

Similarly, Section 1985 provides a cause of action for those injured by certain conspiratorial acts aimed at "depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," or at "preventing or hindering the constituted authorities of a State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3). The four elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Feliz v. City of New York*, No. 19-cv-6305, 2022 WL 446043, at *11 (S.D.N.Y. Feb. 14, 2022).  The conspiracy must also be motivated by some racial or otherwise class-based, invidious discriminatory animus behind the conspirators' action.  *See id.*

Moreover, Sections 1983 and 1985 do not include limitations provisions.  Rather, "[b]ecause § 1983 claims are best characterized as personal injury actions," a State's "personal injury statute of limitations should be applied to all § 1983 claims."  *Ramon*, 2019 WL 2271896, at *3 (quoting *Owens v. Okure*, 488 U.S. 235, 240-41, 109 S. Ct. 573, 577 (1989)).  As set forth above, the limitations period applicable to § 1983 and § 1985 claims under New York law is three years.  *See* N.Y. C.P.L.R. § 214; *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018).

In the extradition context, the Constitution imposes an obligation upon each state to extradite a fugitive found within its borders to the state from which he has fled upon proper demand from that state.  This constitutional provision, Art. 4, § 2, cl. 2-3, is implemented by 18 U.S.C. § 3182.  Absent from both the Constitution and § 3182's text, however, are any details of the mechanism for effecting extradition.  *Id.*  This omission as led to many states creating their own procedural safeguards for the benefit of the accused, including a requirement that they be taken before a court, who shall inform the accused of the extradition demand and of the charges against him or her, and that he or she has the right to counsel and to challenge the legality of the arrest or detention, through a *habeas corpus* proceeding.  *See Ramon*, 2019 WL 2271896, at *6.  Importantly, however, while violations of these safeguards may give rise to a cause of action for false arrest or false imprisonment in the state whose law

was breached, a § 1983 action is an inappropriate avenue to seek a remedy because those safeguards derive from state, rather than federal law.  *See id.*

In light of the above, the Court concludes that McKeever has failed to establish that he possesses a cognizable extradition right under 18 U.S.C. § 3182, rendering his §§ 1983 and 1985 claims legally defective.  Initially, the Court notes that while the Second Circuit has not explicitly addressed this issue in the §§ 1983 or 1985 context, at least one court within the Circuit has concluded that, while 18 U.S.C. § 3182 permits plaintiffs to challenge their extradition processes, it neither creates an individual right against extradition nor provides a legal predicate upon which to a plaintiff may base a § 1983 action.  *See Powell v. Saratoga County*, No. 18-cv-1166, 2019 WL 1253026, at *3 (N.D.N.Y. Mar. 19, 2019) (citing *Johnson v. Buie*, 312 F. Supp. 1349, 1350-51 (W.D. Mo. 1970)).  Consistent with this holding, the Court concludes that McKeever has failed to establish a substantive right conferred by 18 U.S.C. § 3182, thus precluding his Section 1983 and 1985 causes of action.  *See Feliz*, 2022 WL 446043, at *11; *Ramon*, 2019 WL 2271896, at *6.  Accordingly, the Court concludes that Plaintiff's §§ 1983 and 1985 claims are untenable, and respectfully recommends that they be dismissed with prejudice and without leave to replead.

### 3.  Title VI

McKeever next brings a claim pursuant to Title VI for discrimination based on his "race, color, and [s]tatus as a felon."  SAC at 25.  Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.   Thus, this statute prohibits federal funding from going to any person, organization, or government agency that discriminates based on race, color or national origin.  *See Khalil v. Pratt Inst.*, No. 16-cv-6731, 2019 WL 1052195, at *8 (E.D.N.Y. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1046248 (E.D.N.Y. Mar. 4, 2019) (citing *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010)).  To state a claim for discrimination under Title VI, the plaintiff must allege that: (1) the defendant discriminated against him on the basis of race, color, or national origin; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's actions.  *See Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001); *see also Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-cv-2553, 2013 WL 5652503, at *10 (E.D.N.Y. Oct. 16, 2013) (internal citations omitted).

Here, even based on a liberal review of the allegations set forth in Plaintiff's pleadings, McKeever has failed to sufficiently state the elements of his Title VI discrimination claim.  Simply stated, McKeever has alleged no facts regarding how Defendants intentionally discriminated against him, and his corresponding argument as to the County, is insufficient.  Indeed, McKeever does not once, in his nearly 70-page Opposition to Defendants' Motions, address his factually unsupported Title VI claim.  For this reason, the Court concludes that Defendants' Motions should be granted as to this cause of action, and it be dismissed with prejudice and without leave to replead.

### 4. Defendants' Immunity Arguments

Defendants next assert that they are all – to varying degrees – immune from suit in this matter.  Specifically, they contend that:  (i) the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll are entitled to both sovereign immunity and absolute prosecutorial immunity, *see* PA/DA Mem. at 14-17; County Def. Mem. at 7-9; and (ii) Martin and the PA/DA Defendants are shielded from suit by qualified immunity.  *See* Martin Mem. at 6-7; PA/DA Mem. at 21-22.

### a. Prosecutorial Immunity

Initially, Defendants assert that the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll are completely immune from the instant action based on prosecutorial immunity.  *See* PA/DA Mem. at 14-17; County Def. Mem. at 7-8.  It is well established that prosecutors are absolutely immune from civil suits for acts committed within the scope of their official duties where the challenged activities are "intimately associated with the judicial phase of the criminal process." *Player v. Sini*, No. 21-cv-5613, 2021 WL 5084172, at *3 (E.D.N.Y. Nov. 1, 2021) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S. Ct. 984, 995 (1976)); *see also Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013).  The actions for which a prosecutor is entitled to absolute immunity "include deciding whether to bring charges and presenting a case to a grand jury or a court," *Simon*, 727 F.3d at 171; *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005).  Moreover, the Supreme Court has concluded that absolute prosecutorial immunity shields prosecutors from any Section 1983 liability for acts occurring within their roles as advocates for the state.  *See*

*Buckley v. Fitzsimmons*, 509 U.S. 259, 281 113 S. Ct. 2606, 2620 (1993).  Similarly, the Second Circuit has historically – and consistently – concluded that prosecutors are immune from liability for actions, even those alleged to be malicious or willful, accomplished in the course of their official duties.  *See, e.g., Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate."); *Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (recognizing that a prosecutor is entitled to absolute immunity even where it is alleged that he or she withheld exculpatory evidence or other alleged reprehensible conduct in connection with carrying out prosecutorial duties.).

Applying this standard, the Court concludes that the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll are shielded from suit based on prosecutorial immunity.  Here, McKeever's Second Amended Complaint avers that Plaintiff's civil rights were violated when he was extradited from Pennsylvania to New York.  *See generally* SAC.  Initially, at the time the NCDA applied for the Warrant, criminal proceedings had already commenced.  As a result – and because the Second Circuit has held that the procurement of a warrant for an individual's arrest and extradition is integral to the furtherance of the judicial process, *see Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984) – those County Defendants employed by the NCDA as prosecutors, namely Singas, Gurrier, Kalaydijan, and Murack, are entitled to prosecutorial immunity.  This Court has similarly found the execution of an arrest warrant to be integral to the judicial process, insofar as a law enforcement

official is acting pursuant to a court order.  *See Mandola v. County of Nassau*, 222 F. Supp. 3d 203, 215 (E.D.N.Y. 2016); *Dudek v. Nassau County Sheriff's Dep't.*, 991 F. Supp. 2d 402, 415 (E.D.N.Y. 2013).  For this reason, the Court concludes that Carroll, who executed the Warrant on behalf of the NCDA, *see* SAC ¶ 13, is also entitled to prosecutorial immunity.

The Court concludes that the PA/DA Defendants are entitled to prosecutorial immunity as well.  At least one court within this Circuit has found that a prosecutor's actions relating to the initiation and prosecution of extradition proceedings in order to ensure that an indicted defendant is presented for trial fall squarely within those official prosecutorial duties to which absolute prosecutorial immunity applies.  *See Urbe v. Cohen*, No. 04-cv-1723, 20006 WL 2349567, at* 3 (D. Conn. Aug. 3, 2006). Consistent with this precedent, the Court concludes that Stadtmiller, the ACDA prosecutor whose actions against McKeever were taken within the scope of his involvement in the Pennsylvania extradition proceedings, *see* SAC at 3(a), is entitled to prosecutorial immunity.

Finally, the Court turns to Delaney, a paralegal employed by the ACDA.  *See* SAC at 3(a).  Again, at least one Court within this Circuit has concluded that a non-attorney employee of a prosecutor's office who undertakes ministerial actions "intimately related to the judicial process at the express direction and control of a prosecutor, enjoys absolute immunity."  *Popal v. Brown*, No. 19-cv-832 (KAM), 2019 WL 11624209, at *6, n. 9 (E.D.N.Y. June 13, 2019) (quoting *Doe v. Smith*, 704 F. Supp. 1177, 1185-86 (S.D.N.Y. 1988)).  Moreover, the Second Circuit has held that any non-

attorney employee of a district attorney's office who assists a prosecutor in carrying out his or her prosecutorial functions is covered by absolute prosecutorial immunity to the same extent as the prosecutor they are assisting. *See Malik v. City of New York*, 841 Fed. App'x 281, 284 (2d Cir. 2021) (citing *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995)). For this reason, the Court concludes that Delaney, whose actions in this matter were tied directly to his assisting Stadtmiller and the ACDA in Plaintiff's extradition process, *see* SAC at 3(a), is entitled to absolute prosecutorial immunity. Accordingly, the Court respectfully recommends that the Second Amended Complaint be dismissed with prejudice as to the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll on prosecutorial immunity grounds.

### b. Sovereign Immunity

Defendants next contend that the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll are immune from suit pursuant to the Eleventh Amendment's guarantee of sovereign immunity. *See* PA/DA Mem. at 21-22; County Def. Mem. at 8-9; *see also Player*, 2021 WL 5084172, at *3-4 (citing *Papasan v. Allain*, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-08 (1984)). The Eleventh Amendment bars suits brought by a state's own citizens in federal court, *see Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006), and bars parties "from pursuing a claim for damages against the individual defendants in their official capacities." *Darcy v. Lippman*, 356 Fed. App'x 434, 436-37 (2d Cir.

2009); *Torres v. Spota*, No. 19-cv-296, 2019 WL 3035522, at *3 n. 4 (E.D.N.Y. Jul. 10, 2019) (citing *Ying Jing Gan*, 996 F.2d at 536).

The Court again concludes that the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll should be immune from the Second Amended Complaint because their actions against Plaintiff were taken under the auspices of employment by, or affiliation with, a district attorney's office – either the NCDA or the ACDA – and the Second Amended Complaint is brought against each of them in their official and individual capacities. *See generally* SAC. The Court concludes that the PA/DA Defendants, Singas, Gurrier, Kalaydijan, Murack, and Carroll should each be entitled to sovereign immunity, and recommends that the Second Amended Complaint be dismissed against them with prejudice with respect to McKeever's official capacity claims on this alternate ground.

### c. Qualified Immunity

Defendants next argue that qualified immunity prevents McKeever from holding Martin or the PA/DA Defendants individually liable for any damages suffered as a result of the allegedly illegal extradition. *See* Martin Mem. at 6-7; PA/DA Mem. at 16-17.[5] Qualified immunity protects federal and state officials from both civil damages and "unnecessary and burdensome discovery or trial proceedings[,]" *Spavone v. New York State Dep't of Corr. Services*, 719 F.3d 127, 134 (2013) (quoting *Crawford–El v. Britton,* 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), "where the

---

[5] While the County Defendants allude to the concept of qualified immunity in their motion to dismiss, they only explicitly assert the applicability of prosecutorial immunity and sovereign immunity. *See generally* County Def. Mem.

33

officials' conduct was not in violation of a 'clearly established' constitutional right." *Sudler v. City of New York,* 689 F.3d 159, 174 (2d Cir. 2012), *cert. denied,* 569 U.S. 1018, 133 S. Ct. 2777 (2013); *see also Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013). Qualified immunity extends to circumstances where an official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Spavone,* 719 F.3d at 135 (quoting *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone,* 719 F.3d at 135 (internal quotations and citation omitted). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" *McGarry v. Pallito,* 687 F.3d 505, 512 (2d Cir. 2012) (internal quotations and citation omitted), in light of the "particular factual context" he confronted. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013).

Here, despite McKeever's allegations that his extradition from Pennsylvania to New York deprived him of a federal right, he has failed to demonstrate that: (i) he possesses (or possessed) such a federal right; or (ii) Martin was directly involved in any such violation. The Court thus concludes that Plaintiff's claims against Martin and the PA/DA Defendants fail on qualified immunity grounds. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011) ("Qualified immunity shields

34

federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."). In light of these failures, the Court concludes that the individual capacity claims against Martin and the PA/DA Defendants should be dismissed on qualified immunity grounds and respectfully recommends that these claims be dismissed as to them with prejudice.

### 5. *Monell* Liability

Defendants next seek to dismiss Plaintiff's claim for liability against Allegheny County and Nassau County (the "Counties"), pursuant to *Monell*, 436 U.S. at 658-59, 98 S. Ct. at 2019-20. *See* County Def. Mem. at 10-13; Allegheny Mem. at 10-11. Based on a liberal reading of the Second Amended Complaint and Plaintiff's Opposition, McKeever's *Monell* claim is premised on the theory that the Counties employed supervisors who were "grossly negligent in supervising their [s]ubordinates," namely the PA/DA Defendants and County Defendants, respectively. Pl. Opp. at 61.

Under *Monell*, municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by the municipality through an official policy or custom. *See* 436 U.S. at 658-59, 98 S. Ct. at 2019-20. The "policy or custom" element may be established by demonstrating: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-

maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *See Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).  Consistent with this "policy or custom" requirement, a municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability.  *See Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 480 (E.D.N.Y. 2016) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) (A municipality "cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted).

Under these standards, Plaintiff's *Monell* liability cause of action is untenable. The Second Amended Complaint lacks specific factual allegations to support Plaintiff's contention that the Counties' allegedly unconstitutional acts were taken due to a policy, practice, or custom, or that either of the Counties failed to properly hire, screen, retain, supervise, control, or discipline employees.  *See generally* SAC. Moreover, instead of attempting to clarify or correct these pleading deficiencies, Plaintiff's Opposition relies on the SAC's unsupported and conclusory allegations. *See generally* Pl. Opp.  Finally, in any event, and as set forth above, McKeever has failed to invoke an underlying cognizable constitutional right that was violated.  For

36

these reasons, the Court concludes that Plaintiff's *Monell* claim should be dismissed with prejudice as to Nassau County and Allegheny County, and without leave to replead.

### C. <u>State Law Claim</u>

Having determined that McKeever's federal claims against Singas should be dismissed, the Court recommends declining to exercise supplemental jurisdiction over his state law defamation claim against her because it does not arise out of the same "common nucleus of operative facts" underlying Plaintiff's remaining federal claims against Mineola and Ross.  *See Zap Cellular, Inc. v. Weintraub*, No. 15-cv-6723, 2020 WL 5820319, at *5 (E.D.N.Y. Sept. 30, 2020) (citing *Promisel v. First American Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991); *Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 424 (E.D.N.Y. 2019)).  Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction over "all other claims" in a civil action where the claims are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *Lee v. Korea Cent. Daily News, Inc.*, No. 18-cv-3799, 2021 WL 7906541, at *3-4 (E.D.N.Y. Oct. 18, 2021), *report and recommendation adopted*, 2021 WL 5111919 (E.D.N.Y. Nov. 3, 2021) (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004)).  As the Second Circuit has explained, a common nucleus of operative fact may be found where facts underlying federal and state claims "substantially overlap" or where "presentation of the federal claim necessarily [brings] the facts underlying the state claim before the

court." *Lee*, 2021 WL 7906541, at \*4 (quoting *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, the facts underlying McKeever's state law defamation claim – namely, whether Singas defamed him in her statements to unidentified media outlets – neither "substantially overlap" nor "arise from the same operative facts" as his remaining federal civil rights claims against Mineola and Ross.  Because the federal claims can be resolved without reaching the merits of the defamation claim, which "quintessentially involve[s] questions of New York law since defamation 'is an issue of state, not of federal constitutional law,'" *Harmon v. Bogart*, 500 F. Supp. 3d 8, 16 (W.D.N.Y. 2020) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)), the Court respectfully recommends declining to exercise supplemental jurisdiction over Plaintiff's defamation claim against Singas, and that this claim also be dismissed.

## D. **Leave to Replead**

Given that McKeever is proceeding in a *pro se* capacity, and because it is apparent at this juncture that further amendment would be futile pursuant to Fed. R. Civ. P. 15, the Court recommends that he not be granted an additional opportunity to replead his claims against Martin, the PA/DA Defendants, the County Defendants, or Allegheny County in a Third Amended Complaint.  *See  Razzoli v. City of New York*, No. 16-cv-7136, 2022 WL 2066109, at \*2 (S.D.N.Y. Jun. 8, 2022) (quoting *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016)) ("Although courts generally take a liberal approach in permitting pro se plaintiffs to amend their pleadings, 'leave

to amend need not be granted when amendment would be futile.'"); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (Repleading is futile when "[t]he problem with [a plaintiff's] cause of action is substantive" and "better pleading will not cure it.").

## IV.   CONCLUSION

For the reasons set forth above, the Court respectfully recommends that:  (i) Defendants' Motions be granted in their entirety; (ii) Plaintiff's Second Amended Complaint be dismissed with prejudice as to Martin, the PA/DA Defendants, the County Defendants, and Allegheny County; and (iii) McKeever not be granted leave to replead.  Plaintiff's claims against Mineola and Ross, however, remain.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.  Defendants are directed to promptly serve a copy of this Report and Recommendation on Plaintiff and file proof of service.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
             June 16, 2022

<u>/s/ Steven I. Locke</u>
STEVEN I. LOCKE
United States Magistrate Judge